IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **ROBERTA L. HINES,** | * | |
| Plaintiff, | * | |
| v. | * | Civil Case No. SAG-20-1808 |
| **MAYOR AND CITY OF BALTIMORE, BC OFFICE OF INFO TECH** | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Roberta L. Hines ("Plaintiff") brought this employment discrimination lawsuit against the Mayor and City Council of Baltimore, Baltimore City Office of Information Technology ("the City") alleging violations of the Equal Pay Act and Title VII, ECF 1. The parties have filed cross-Motions for Summary Judgment, ECF 35, 41. While those motions were pending, Plaintiff filed a Motion to Amend or Correct the Complaint, ECF 44, which the City opposed, ECF 45. Finally, the City filed a Motion to Strike Plaintiff's reply to its opposition of her Motion to Amend, ECF 49. The issues have been briefed, ECF 43, ECF 46, ECF 47, ECF 48, and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the reasons stated below, Plaintiff's Motion for Summary Judgment, ECF 35, will be denied; the City's Motion for Summary Judgment, ECF 41, will be granted; Plaintiff's Motion to Amend the Complaint, ECF 44, will be denied; and the City's Motion to Strike, ECF 49, will be denied.

**I.   FACTUAL BACKGROUND**

Plaintiff began her employment with the City on March 27, 2017, as an assistant to the Chief Information Officer ("CIO") for the Baltimore City Information Technology Office. ECF

1

41-1 at 2-3; ECF 41-5 at 36:10. In this role, Plaintiff assisted the CIO as needed, including through "managing a calendar, taking dictation, and being a right hand." ECF 41-5 at 36:16-18. In 2017, while employed by the City, Plaintiff earned a master's degree in Project Management. ECF 41-5 at 60-61.

On January 29, 2018, Plaintiff was promoted to the role of information technology ("IT") Project Manager. ECF 41-1 at 2-3. IT Project Managers "manage[] the day-to-day technical, operational, and administrative aspects of an agency-budgeted project . . ." ECF 35-6. The particular responsibilities and functions of a given IT Project Manager range from the holistic management of the entire lifecycle of a project to discrete assignments in support of projects already in progress. *See* ECF 41-8 at 3-4; ECF 41-5 at 54:7-17. Upon her ascension to the IT Project Manager role, Plaintiff was assigned projects concerning equipment "installs, moves, adds, and changes ('IMAC')." ECF 41-8 at 3. These projects were "limited in scope and complexity, . . . [and] related to coordination of equipment for departments." *Id.*

Roughly a year prior to Plaintiff's promotion, the City upgraded the IT Project Manager position from grade 929 to grade 939—a classification eligible for annual base employment between $85,417 and $140,766—and recharacterized all current IT Project Managers accordingly. ECF 35-4 at 1; ECF 35-6. In doing so, however, the City failed to correspondingly update the pay scale of the two IT Project manager positions which were vacant at the time. ECF 35-4 at 1. Upon her promotion, Plaintiff filled one of these two vacant positions, resulting in her inaccurate characterization as a grade 929 employee. *Id.* As such, although Plaintiff received a 10% raise, and an annual base salary of $79,090 upon her hire, her compensation was not commensurate with her role and pay classification. ECF 35 at 2. Richard Garner was hired into the remaining vacant position in March, 2018, and was similarly misclassified as a grade 929 employee. ECF 35-4 at

1. Despite being mischaracterized as grade 929, Mr. Garner received an annual base salary of $105,000. *Id.* In his role as IT Project Manager, Mr. Garner was tasked with long-term project work, "which involved creating new plans and identifying which steps were needed for each project from start to finish." ECF 41-8 at 3.

In July, 2018, Eric Wildberger became Plaintiff's immediate supervisor. ECF 41-1 at 3; ECF 1 at 5. On August, 21, 2018, Mr. Wildberger notified Plaintiff of negative reports regarding her workplace performance and behavior, and issued a "Performance Concern Memo," detailing the same. ECF 35 at 6; ECF 35-10 at 1. Approximately one month later, Mr. Wildberger placed Plaintiff on a Performance Improvement Plan ("PIP"), which began on September 17, 2018 and was scheduled to end on January 11, 2019. ECF 35-10 at 1. Among the deficiencies reported in the PIP were Plaintiff's failure to use the mandatory SharePoint folders, a pattern of past-due weekly status reports, and multiple complaints of unprofessional or inconsiderate communications or conduct toward City employees. *Id.* The PIP detailed expectations for her improved performance in these and other areas, and provided for an interim assessment and summary after an initial 90-day period. *Id.* On November 19, 2018, Plaintiff received notice that the PIP would be terminated "[b]ased on the feedback from your current supervisor [that] your performance does not rise to the level of progressing to disciplinary action." ECF 35-15. Plaintiff subsequently requested that the PIP be removed from her employment file, to no avail. ECF 1-3 at 97-98, 101.

As supervisor, Mr. Wildberger was responsible for delivering his subordinates' timesheets to Shannon Dawkins, a Human Resources ("HR") specialist. Plaintiff requested that Mr. Wildberger refrain from submitting her timesheet alongside other employees' timesheets, because it contained sensitive medical information, including a cancer screening certification form. ECF 41-11 at 2. Despite this request, on October 3, 2018, Mr. Wildberger included Plaintiff's

timesheets among other subordinates' timesheets, which were sent by email to Shannon Dawkins and copied to other members of Mr. Wildberger's staff. *Id.* Plaintiff reported the incident internally, and an investigation commenced. ECF 41-1 at 6. On November 13, 2018, Mr. Wildberger received a written reprimand for the incident, which was determined to be a violation of the City's policies regarding personnel-related information. *Id.*; *see also* ECF 41-11.

In November, 2018, Plaintiff complained of her inaccurate pay grade to several City employees, including Kursten Jackson, the Director of HR for the City's IT Office. ECF 41-4. On December 14, 2018, Jackson informed Plaintiff that her request for salary reclassification "must be reviewed by DHR Classification/Compensation and will need to go through the board process for approval; and that there is no timeframe as to the review process." *Id.* On February 13, 2019, the City issued a determination in which it concluded that Plaintiff's position as IT Project Manager had been "classified under the incorrect job code and grade." ECF 35-7. The notice specified that Plaintiff was "eligible for retro pay the difference between the grade minimum of 929 and 939" for the period between her promotion on January 29, 2018, and February 22, 2019. *Id.*

Prior to the initiation of this suit, Plaintiff filed three charges of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"). First, on December 18, 2018, Plaintiff filed an EEOC charge alleging discrimination based on "Equal Pay." ECF 41-3. Plaintiff asserted that "[t]here are five males in my department with the same position who are paid at a higher pay scale . . . ." *Id.* On February 5, 2019, Plaintiff filed a second EEOC charge, again alleging discrimination based on sex, asserting that she was paid less than her male counterparts in violation of the Equal Pay Act. ECF 41-4. *Id.* On March 4, 2019, the City signed an invitation to settle, reflecting its desire to attempt a pre-determination settlement of Plaintiff's earlier EEOC

charges, and indicating its willingness to negotiate the interest amount on backpay owed to Plaintiff for the period between January 29, 2018 and February 22, 2019. ECF 35-8. Finally, in March, 2020, Plaintiff filed a third EEOC charge, alleging discrimination based on "Personal/Power Harassment." ECF 41-6. Plaintiff claimed that Mr. Wildberger "subjected me to a hostile work environment," which included "threatening my job, putting me on unwarranted PIPs, yelling at me, speaking in a condescending manner to me, and disrupting my work." *Id.*

Plaintiff filed suit in this Court in June, 2021, alleging violations of the Equal Pay Act (Count I) and Title VII (Count II), and seeking compensatory, treble, and punitive damages. ECF 1 at 5. The City answered Plaintiff's complaint, admitting that it had misclassified and subsequently corrected Plaintiff's pay grade, but denying liability on either claim. ECF 26. Discovery commenced, and was concluded on July 12, 2021, pursuant to this Court's scheduling order. ECF 27. On October 10, 2021, after cross-motions for summary judgment, ECF 35, 41, Plaintiff filed a motion seeking leave from this Court to file an amended complaint. ECF 44. Plaintiff seeks to amend her complaint to add claims of discrimination based on race and discrimination in violation of the Americans with Disabilities Act ("ADA"), and to conduct additional discovery on these, and other issues. *Id.*; *see also* ECF 46.

## II. PLAINTIFF'S MOTION TO AMEND THE COMPLAINT

### A. Legal Standard

Federal Rule of Civil Procedure 15 provides that a party seeking to amend its pleading after twenty-one days following service may do so "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). However, the Rule requires courts to "freely give leave when justice so requires." *Id.* The Fourth Circuit's policy is "to liberally allow amendment." *Galustian v. Peter*, 591 F.3d 724, 729 (4th Cir. 2010). Accordingly, leave to amend should be

denied only "when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509-10 (4th Cir. 1986) (internal citations omitted)); *Hart v. Hanover Cnty. Sch. Bd.*, 495 F. App'x 314, 315 (4th Cir. 2012). Ultimately, the decision to grant leave to amend rests in this Court's discretion. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Laber*, 438 F.3d at 428.

Because Plaintiff is seeking leave to amend after the close of discovery, however, the liberal Rule 15 standard must be weighed against the requirements of Federal Rule of Civil Procedure 16(b)(4), which provides that "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).

**B. Analysis**

Plaintiff seeks leave to amend her complaint to add two new causes of action: race-based discrimination in violation of Title VII, and disability discrimination in violation of the ADA.[1] ECF 44-1. To justify her request, Plaintiff asserts that "the filing of the amendment will be beneficial and bring clarity to bring this case to a close. . . some matters were brought to the forefront that were conflicting on the Defendants behalf and should be properly addressed on the record." *Id.* The City, for its part, opposes Plaintiff's motion, arguing that the amendment (1) is

---

[1] Plaintiff also seeks to amend her complaint to add: (1) a known damages amount; (2) an assertion that she exhausted administrative remedies for her HIPAA claim; and (3) a request for jury trial. ECF 44-1. Plaintiff also asks for the opportunity to: "subpoena current and former employees . . . who witnessed first-hand any and all workplace harassment and pay issues" and "to subpoena medical records . . . for employee Eric Wildberger." *Id.*

not justified by good cause; (2) would prejudice the City; and (3) is futile.[2]  ECF 45.  For the reasons described below, this Court agrees.

The first reason cited by the City is determinative.  In its scheduling order, this Court specified that discovery shall be completed by July 12, 2021, with motions for summary judgment to be filed the month thereafter.  ECF 27.  On July 12, 2021, the parties filed a joint status report specifying that discovery had been completed, and indicating that the only additional motions that the parties intended to file were motions for summary judgment.  *Id.*  Plaintiff now seeks to file a new complaint and conduct additional discovery, in contravention of this Court's scheduling order, ECF 27, and her earlier representations, ECF 32.  As such, Plaintiff must satisfy the good cause standard set forth in Rule 16(b)(4) before this Court will consider her motion under Rule 15.

Other cases have described a similar tension between these two federal rules.  In *Nourison Rug Corp. v. Parvizian*, like in the instant case, a party sought amendment of its pleading after the expiration of the deadline in the scheduling order.  535 F.3d 295, 297 (4th Cir. 2008).  The Fourth Circuit noted that, "[g]iven their heavy case loads, district courts require the effective case management tools provided by Rule 16."  *Id.* at 298.  Accordingly, the Fourth Circuit explained that the party seeking to modify the scheduling order must meet the good cause requirement of Rule 16(b)(4) before the court would consider the more liberal standard for amendment of a

---

[2] The City also argues that Plaintiff's reply to the City's opposition to her Motion to Amend, ECF 48, should be struck.  ECF 49.  This Court acknowledges that Plaintiff's response to the City's opposition to her Motion to Amend exceeded the fourteen-day deadline observed by this Court, Loc. R. 105.2.a (D. Md. 2021).  In these circumstances, the Court has discretion whether to consider the untimely brief.  *H & W Fresh Seafoods, Inc. v. Schulman*, 200 F.R.D. 248, 252 (D. Md. 2000).  This Court is not inclined to unnecessarily deprive Plaintiff of an opportunity to fully advance her positions and has accordingly reviewed and considered her filing.  This Court further observes that the City's Motion is, itself, improper because it asks this Court to strike a motion, not a pleading.  The Federal Rules of Civil Procedure do not authorize such relief.  *See* Fed. R. Civ. P. 12(f) (stating that the court make strike certain, specified materials from a *pleading*); Fed. R. Civ. P. 7(a) (defining pleadings).  The motion to strike will therefore be denied.

pleading in Rule 15(a)(2). *Id.*; *see also Cook v. Howard*, 484 Fed. App'x. 805, 814-15 (4th Cir. 2012) ("[U]nder Rule 16(b)(4), a party must first demonstrate 'good cause' to modify the scheduling order deadlines, before also satisfying the Rule 15(a)(2) standard for amendment.").

To establish good cause, the party seeking to amend the scheduling order must "show that the deadlines cannot reasonably be met despite the party's diligence . . . the good-cause standard will not be satisfied if the [district] court concludes that the party seeking relief (or that party's attorney) has not acted diligently in compliance with the schedule." *Cook*, 484 F. App'x at 815 (quoting 6A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice & Procedure* ("Wright & Miller") § 1522.2); *see also Rassoull v. Maximus, Inc.*, 209 F.R.D. 372, 374 (D. Md. 2002) ("Lack of diligence and carelessness are 'hallmarks of failure to meet the good cause standard.'" (citations omitted)); *Potomac Elec. Power Co. v. Elec. Motor Supply, Inc.*, 190 F.R.D. 372, 375 (D. Md. 1999) ("Properly construed, 'good cause' means that scheduling deadlines cannot be met despite a party's diligent efforts. Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." (internal citations and quotations omitted)).

Applying these standards, Plaintiff has failed to establish good cause for her tardy motion to amend. Here, Plaintiff offers only a perfunctory justification for her motion, stating that it would "be beneficial" and "bring clarity" to the case. ECF 44-1 at 2. There is simply no reason Plaintiff could not have acted with greater diligence to pursue her current discovery requests prior to this Court's specified deadline. More importantly, Plaintiff's Amended Complaint seeks to add new counts for race and disability discrimination. Plaintiff does not allege that these new legal theories somehow turn on information she acquired after the original discovery deadline. Ultimately, Plaintiff simply failed to act with the requisite diligence in adding the proposed race and disability

discrimination claims. *See Kantsevoy v. LumenR LLC*, 301 F. Supp. 3d 577, 590 (D. Md. 2018) (defendant's argument that it "had not previously 'appreciated' its potential counterclaim, despite having knowledge of the document that purportedly gave rise to it, does not support its claim of diligence."); *CBX Techs., Inc. v. GCC Techs., LLC*, 2012 WL 3038639, at *4 (D. Md. July 24, 2012) ("[Plaintiff] has not offered any facts that would support an amended complaint and that were not discoverable by [plaintiff] through proper diligence prior to the deadline of the original scheduling order for filing a motion for leave to amend the complaint.").

Even assuming it was supported by good cause, Plaintiff's motion would remain subject to denial under Rule 15(a)(2) for its potential to prejudice the City. Although leave to amend under Rule 15(a)(2) is freely given, it should be denied where it prejudices the opposing party. *See Laber*, 438 F.3d at 426. "Perhaps the most important factor listed by the [Supreme] Court for denying leave to amend is that the opposing party will be prejudiced if the movant is permitted to alter a pleading." Wright & Miller, § 1487 at 701 (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321 (1971); *United States v. Hougham*, 364 U.S. 310 (1960)). The burden of showing prejudice falls on "[t]he party opposing amendment." *Atlantic Bulk Carrier Corp. v. Milan Exp. Co.*, 2010 WL 2929612, at *4 (E.D. Va. July 23, 2010). "Whether an amendment is prejudicial will often be determined by the nature of the amendment and its timing . . . [T]he further the case progressed before judgment was entered, the more likely it is that the amendment will prejudice the defendant . . .". *Newport News Holdings Corp. v. Virtual City Vision, Inc.*, 650 F.3d 423, 439 (4th Cir. 2011) (quoting *Laber*, 438 F.3d at 427). Prejudice can be found "where a proposed amendment raises a new legal theory that would require the gathering and analysis of facts not already considered by the opposing party [and] . . . the amendment is offered shortly before or during trial." *Johnson*, 785 F.2d at 510 (citations omitted). In contrast, "[a]n amendment

is not prejudicial . . . if it merely adds an additional theory of recovery to the facts already pled and is offered before any discovery has occurred." *Laber*, 438 F.3d at 427. Thus, the court must examine the facts of each case "to determine if the threat of prejudice is sufficient to justify denying leave to amend." Wright & Miller, § 1487 at 701.

Here, the prejudice that would accrue to the City if this amendment were granted is evident. This case has progressed throughout the entirety of discovery to the point of cross-motions for summary judgment. Plaintiff's proposed additional claims, offered after the close of discovery, would "raise[] a new legal theory that would require the gathering and analysis of facts not already considered by the [City]." *Laber*, 438 F.3d at 427 (quoting *Foman*, 371 U.S. at 182). Absent reopening discovery, the City would suffer extreme prejudice as a result of Plaintiff's amendment. Additionally, the parties would have to undertake new summary judgment briefing to address Plaintiff's new claims.

The City finally argues that Plaintiff's motion to amend should be denied as futile. ECF 45 at 4-5 (citing *Foman*, 371 U.S. at 178). The City asserts that Plaintiff's race and disability discrimination claims are barred by her failure to exhaust administrative remedies by filing such charges with the EEOC. *Id.* Even if Plaintiff's claims were viable, however, there is no good cause to support the delayed assertion of her race and disability-based discrimination claims in this matter. In light of that fact, and the prejudice that would accrue to the City if leave to amend were granted, Plaintiff's motion will be denied.[3]

---

[3] In her memorandum in opposition to the City's Motion for Summary Judgment, Plaintiff provides a list of individuals and requests "the court to subpoena these individuals [to] clear up any hearsay issues the Defendant alleges and to establish any or all liability on the City." *See* ECF 43 at 3. Similarly, Plaintiff also filed "Miscellaneous Papers to Update Response Defendants' Motion for Summary Judgment," in which she reiterates her request for the subpoena of specified persons. ECF 46. To the extent that these filings relate to her Motion to Amend and to seek additional discovery, ECF 44, they are denied for the reasons described above. Moreover, to the

10

### III. MOTIONS FOR SUMMARY JUDGMENT

#### A. Legal Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of showing that there is no genuine dispute of material facts. *See Casey v. Geek Squad*, 823 F. Supp. 2d 334, 348 (D. Md. 2011) (citing *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987)). If the moving party establishes that there is no evidence to support the non-moving party's case, the burden then shifts to the non-moving party to proffer specific facts to show a genuine issue exists for trial. *Id.* The non-moving party must provide enough admissible evidence to "carry the burden of proof in [its] claim at trial." *Id.* at 349 (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993)). The mere existence of a "scintilla of evidence" in support of the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find in its favor. *Id.* at 348 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)). Moreover, a genuine issue of material fact cannot rest on "mere speculation, or building one inference upon another." *Id.* at 349 (quoting *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999)).

Additionally, summary judgment shall be warranted if the non-moving party fails to provide evidence that establishes an essential element of the case. *Id.* at 352. The non-moving

---

extent that these filings seek additional discovery to justify her opposition to summary judgment, such a request is properly presented to the Court upon a filing of an affidavit pursuant to pursuant to Federal Rule of Civil Procedure 56(d). The affidavit must explain why "for specified reasons, it cannot present facts essential to justify its opposition," without further discovery. *Id.*; *see also Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996). The absence of such an affidavit provides a sufficient independent reason to deny the request.

party "must produce competent evidence on each element of [its] claim." *Id.* at 348-49 (quoting *Miskin*, 107 F. Supp. 2d at 671). If the non-moving party fails to do so, "there can be no genuine issue as to any material fact," because the failure to prove an essential element of the case "necessarily renders all other facts immaterial." *Id.* at 352 (quoting *Coleman v. United States*, 369 F. App'x 459, 461 (4th Cir. 2010) (unpublished)). In ruling on a motion for summary judgment, a court must view all of the facts, including reasonable inferences to be drawn from them, "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

### B. Equal Pay Act (Count I)

In Count I, Plaintiff alleges that she was paid less than her male colleagues in violation of the Equal Pay Act ("EPA"). The EPA bars employers from engaging in gender-based discrimination by paying unequal pay for equal work. *See* 29 U.S.C. § 206(d)(1). To prove a claim under the EPA, a plaintiff must establish a prima facie case of discrimination "by demonstrating that (1) the defendant-employer paid different wages to an employee of the opposite sex (2) for equal work on jobs requiring equal skill, effort, and responsibility, which jobs (3) all are performed under similar working conditions." *EEOC v. Maryland Ins. Admin.*, 879 F.3d 114, 120 (4th Cir. 2018) (citing *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974)). "The comparison must be made 'factor by factor with the male comparator.'" *Strag v. Bd. of Trustees, Craven Cmty. Coll.*, 55 F.3d 943, 948 (4th Cir. 1995) (quoting *Houck v. Virginia Polytechnic Institute*, 10 F.3d 204, 206 (4th Cir. 1993)).

If a prima facie case is established, the burdens of both production and persuasion shift to the employer. *Maryland Ins. Admin.*, 879 F.3d at 120. The employer must show that the

discrepancy in wages is explained by one of four affirmative defenses: (1) a seniority system; (2) a merit system; (3) a pay system based on quantity or quality of output; or (4) a disparity based on any factor other than sex. *See* 29 U.S.C. § 206(d)(1). If the employer fails to meet its twin burdens of production and persuasion on one of those four affirmative defenses, the plaintiff will prevail. *Brinkley-Obu v. Hughes Training, Inc.*, 36 F.3d 336, 344 (4th Cir. 1994).

Plaintiff has not made a prima facie showing of discrimination under the EPA. As an initial matter, Plaintiff asserts, and the City does not dispute, that she was paid less than her male comparator, Mr. Garner. *See* ECF 35 at 3. As such, Plaintiff satisfies the first element, notwithstanding the City's protestations that a female IT Project Manager also received a higher salary than Plaintiff. *See Maryland Ins. Admin.*, 879 F.3d at 122 ("An EPA plaintiff is not required to demonstrate that males, as a class, are paid higher wages than females, as a class, but only that there is discrimination in pay against an employee with respect to one employee of the opposite sex." (citing *Fowler v. Land Mgmt. Groupe, Inc.*, 978 F.2d 158, 161 (4th Cir. 1992)). On the second element, however, Plaintiff's evidence falls short. While it is undisputed that Plaintiff holds the same job position and title as her male comparator, "sharing a job title and job description is not dispositive of the issue." *Id.* at 121. As Plaintiff herself acknowledges, "[j]ob content (not job titles) determines whether jobs are substantially equal." ECF 35 at 9. Beyond their shared titles, Plaintiff offers no evidence that Plaintiff's duties are substantially equal to her comparator's. By contrast, the City demonstrates that as a functional matter, the "IT Project Manager" job title encompasses an array of diverse roles with varying responsibilities. *See* ECF 41-5 at 54:7-17 (Ex. 3, Hines Dep.) ("[IT] project managers can be used as business analysis, coordinators, schedulers, procuring and fiscal persons or whatever. So our jobs as IT project managers can vary. So we may not necessarily manage a project whole project [*sic*] cycle . . ."). The City also provided

13

evidence—including an affidavit from the City IT Office's HR Director—indicating that relative to her comparator's supervision of long-term, complex projects "from start to finish," Plaintiff was generally assigned to more discrete assignments and equipment support. *See, e.g.*, ECF 41-8 at 3. Plaintiff offers no facts to rebut the City's showing.[4]

Because Plaintiff fails to adduce competent evidence as to each essential element of her EPA claim, the City is therefore entitled to summary judgment on Count I.

### C. Hostile Work Environment (Count II)

In Count II of her Complaint, Plaintiff alleges that the City subjected her to a hostile work environment because of her sex in violation of Title VII. To establish a Title VII claim for a hostile work environment, "a plaintiff must show that there is (1) unwelcome conduct; (2) that is based on the plaintiff's . . . [sex]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (quoting *Okoli v. City of Balt.*, 648 F.3d 216, 220 (4th Cir. 2011)). "If the harasser is a supervisor, then the employer may be either strictly or vicariously liable," depending on whether the harassment "culminates in a 'tangible employment action.'" *Strothers v. City of Laurel, Md.*, 895 F.3d 317, 333, 333 n.6 (4th Cir. 2018) (quoting *Vance v. Ball State Univ.*, 570 U.S. 421, 429-31 (2013)). A plaintiff must provide evidence sufficient to show that she "did perceive, and a reasonable person would perceive, the environment to be abusive or hostile." *Evans v.*

---

[4] This Court's conclusion as to Plaintiff's prima facie showing is not impacted by the City's assertions that Plaintiff's male comparator was more highly qualified and experienced than Plaintiff herself. Evidence as to this point is only relevant as to the City's potential affirmative defenses, and not to Plaintiff's initial burden. *See Maryland Ins. Admin.*, 879 F.3d at 122 ("background experience, relevant professional designations, and licenses or certifications . . . are relevant only to any affirmative defense asserted by [defendant], not to the issue [of] whether the [plaintiff] has satisfied its prima facie burden.").

14

*International Paper Co.*, 936 F.3d 183, 192 (4th Cir. 2019) (quoting *E.E.O.C. v. Cent. Wholesalers, Inc.*, 573 F.3d 167, 175 (4th Cir. 2009)).

Viewing the facts in the light most favorable to Plaintiff, she has not adduced evidence that would permit this Court to infer that the alleged conduct was based on her sex. In her Complaint, Plaintiff asserts two specific instances of alleged misconduct: (1) Mr. Wildberger's decision to place her on a PIP; (2) Mr. Wildberger's transmission via email of her timesheet "with personal cancer screening information" to herself and other colleagues. ECF 1 at 5. Although these incidents may be undeserved or unprofessional, Title VII does not protect employees from unpleasant or hostile conditions unless the conditions occur because of the employee's protected status. *See Graham v. Prince George's Cnty.*, 191 Fed. Appx. 202, 204 (4th Cir. 2006) (affirming summary judgment because "although [the] facts reflected an unpleasant working environment, they did not support a hostile one based on an unlawful characteristic"). A plaintiff must allege that her protected trait is the but-for cause of alleged harassment. *See, e.g., Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998). At most, here, Plaintiff merely alleges that the instances occurred, and that she is female; there are no facts to support a causal link between the two. Without more, then, Plaintiff's allegations are insufficient to sustain a claim of sex-based hostile work environment.

Additionally, Plaintiff fails to establish that the alleged incidents were sufficiently severe or pervasive such that they effectuated discriminatory changes in the terms and conditions of her employment. "This standard requires an objectively hostile or abusive environment—one that a reasonable person would find hostile or abusive—as well as the victim's subjective perception that the environment is abusive." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993); *see also Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 333 (4th Cir. 2003). In determining whether an environment

is objectively hostile, courts must consider all circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Boyer-Liberto*, 786 F.3d at 277 (quoting *Harris*, 510 U.S. at 23). This standard is intended to "filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

Plaintiff here alleges two instances of allegedly hostile conduct over a three-year period. The infrequency of the conduct is not, itself, dispositive. *See id.* at 277 ("an 'isolated incident' of harassment can 'amount to discriminatory changes in the terms and conditions of employment,' if that incident is 'extremely serious.'" (quoting *Faragher*, 524 U.S. at 788)). Here, however, the alleged conduct also lacks the severity that characterizes viable hostile work environment claims. Plaintiff's placement on a PIP did not alter the terms or conditions of her employment, nor was it subsequently used as a basis to do so. *See Jensen-Graf v. Chesapeake Employers' Ins. Co.*, 616 F. App'x 596, 598 (4th Cir. 2015) (No adverse employment action where Plaintiff "failed to allege that she received lower pay, was demoted, was passed over for a promotion, failed to receive a bonus, or given significantly different responsibilities because she was placed on the PIP."). Indeed, Plaintiff provides evidence establishing that her PIP was terminated in November, 2018, and did not result in disciplinary action. ECF 35-15.[5] Similarly, although the dissemination of

---

[5] Plaintiff's vague references to "a gross discussion made by the acting manager's breast cancer examination because of her sex," ECF 49 at 2, also does not suffice at this stage. This is particularly true where, as here, there is no indication that this conversation is distinguishable from the "sporadic use of abusive language, gender-related jokes, and occasional teasing" that the standard is designed to exclude. *See Faragher*, 524 U.S. at 788.

16

Plaintiff's personal health information is regrettable, this episode falls far below the legal threshold of conduct that is "degrading and humiliating in the extreme." *Compare Boyer-Liberto*, 786 F.3d at 280 (objective severity satisfied where supervisor had "employed racial epithets to cap explicit, angry threats that she was on the verge of utilizing her supervisory powers to terminate [plaintiff]") *with Irani v. Palmetto Health*, 767 F. App'x 399, 417 (4th Cir. 2019) (unpublished) (two odious racist comments—referring to plaintiff as a terrorist—made over an 18-month period and not connected to employment decisions did not create actionable hostile work environment.).

Simply put, Plaintiff fails to provide evidence that the alleged conduct was sufficiently severe or pervasive that it changed the terms of her employment, nor does she adduce facts to suggest that the conduct occurred due to her sex.[6] The City is accordingly entitled to summary judgment on Count II.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Summary Judgment, ECF 35, is DENIED as to all claims. Defendant's Motion for Summary Judgment, ECF 41, is GRANTED as to all claims. Plaintiff's Motion to Amend, ECF 44, is DENIED, and Defendant's Motion to Strike, ECF 49, is DENIED. A separate Order of Judgment follows.

Dated: December 10, 2021                                 /s/
                                            Stephanie A. Gallagher
                                            United States District Judge

---

[6] The City contends that Mr. Wildberger's dissemination of Plaintiff's personal health information cannot be imputed to it because it has an affirmative defense: namely, that it acted promptly to prevent and correct the behavior. *See* ECF 41-1 at 16 (citing *Burlington Indus. Inc. v. Ellerth*, 524 U.S. 742, 765 (1995)). In light of the conclusion that that the conduct is not sufficiently severe or pervasive, this Court finds it unnecessary to consider the City's argument.